EBEN McLELLAN, *Executor, in Equity, versus* WOODBRIDGE
C. OSBORNE *& als.*

Where one had taken a bill of sale of a part of a vessel, absolute in form, but
designed as collateral security, if afterwards he assumes to act as an owner,
pays bills against the vessel, and suffers judgment to go against him on de-
fault, when sued as an owner, — such acts afford sufficient evidence to hold
him liable, in a suit in equity, by a co-owner, for contribution.

So, if the vendee afterwards purchases and pays for the part of the vessel so
held by him, but receives no other instrument of transfer, such purchase
and payment will, between the parties, be operative to pass the title.

And, if that part of the vessel be afterwards sold on a writ of execution to the
creditor in the execution as the vendor's property, and by his and the credit-
or's consent the sale was revoked and vacated, and the officer directed to
make no return of the sale on the execution, the former vendee cannot claim
that the sale on execution divested him of his title in the suit in equity by
the co-owner.

SUIT IN EQUITY.

The bill alleges that Thomas McLellan, complainant's tes-
tator, on the twenty-seventh day of July, 1857, became
owner, with defendants, of barque Susan W. Lind; said
complainant of three-eighths, said defendant Woodbridge
C. Osborne of three-eighths, said defendant Amos Chase of
one-eighth, and said defendant Samuel H. Sweetser of one-
eighth; and so continued until the eighth day of Septem-
ber, 1859.

That said complainant, in his capacity as part-owner, by
and with the consent and request of defendants, has collect-
ed and paid over to them, from time to time, their respec-
tive portions of the freights; and, in said capacity, and by
their consent and request, has expended large sums of money
of his own, in and about said barque, in providing supplies
and making repairs necessary for her profitable employ-
ment, and in paying her debts.

That there are still outstanding claims against said barque
for which he and defendants are liable by reason of said
part-ownership; and that no settlement of the accounts and

affairs of said part-ownership has been made between him and defendants, though he has requested the same.

That he has expended as aforesaid thirty-six hundred dollars more than he has ever received; and that particularly he has been compelled to pay the whole of a judgment obtained by Nesmith & Sons in the Circuit Court of the United States, which was for a debt of said part-ownership, and to the payment of which said defendants by reason of said part-ownership should have contributed.

That, upon a true and just settlement, it would appear a considerable balance is due from each of defendants to complainant. And prays an account of all such part-ownership affairs, payment of outstanding bills and contribution from defendants.

Upon the decease of Thomas McLellan, the original complainant, Eben McLellan, executor, came in and duly revived the suit.

The bill was taken *pro confesso* as to Sweetser, by consent.

*Amos Chase,* in his answer, denies "that he became and continued to be an owner as alleged in the bill; — that he never had any legal claim, or pretended to have any, to one-eighth part of the vessel; that Tristram Clark of Biddeford, a former owner of one-eighth, being indebted to one Samuel F. Chase and this defendant, proposed that they should receive of Thomas McLellan, the managing owner of said vessel, the earnings of his, said Clark's, one-eighth part during his absence at sea, towards the payment of his indebtedness to them;" and that "accordingly said defendant received of said Thomas McLellan the earnings of said one-eighth part of said vessel;" that during all the time they received said earnings, the title to the vessel was in said Clark, as exhibited by the records and documents of the custom house in Portland, and no part of said vessel ever appeared by said records and documents to be owned by said Chase and this defendant, or by either of them; and this was well known to said Thomas McLellan, who, as managing owner,

when clearing said vessel, made oath before the proper officer in said custom house, that the said Tristram Clark and others named were the owners of said vessel. That, in the month of November, 1855, said one-eighth of the vessel was advertised and sold as the property of said Clark on an. execution against him in favor of one Hanscomb; that said Thomas McLellan was the owner of the judgment and execution; that one *Williams* became the purchaser, at said sheriff's sale; that since the sale, he, (said Chase,) has never received, nor applied for, any part of the earnings of the vessel, nor claimed to have any interest in her; that said McLellan has never advanced or expended any money, at his request, in providing supplies or in making repairs.

The defendant *Osborne* denied his ownership as stated in the bill of plaintiff, and alleged that he held three-eighths of said barque as collateral security for the indebtedness of one Royal Williams; and the said Royal Williams, at all the times aforesaid, was the real and true owner of the portion of said barque so held by this defendant; and defendant is informed, and believes, said Thomas McLellan knew that said Williams was owner as aforesaid, and that this defendant held the same as security as aforesaid; that it is not true that the said Thomas McLellan has ever, by and with the consent of defendant, collected and paid over to this defendant any portion of the freight and earnings of said barque; but when, from time to time, defendant has demanded of him the earnings of said three-eighths, said Thomas has refused to pay the same to this defendant, and has retained and claimed to retain the earnings of said three-eighths, to be applied to the payment of the indebtedness of said Royal Williams to himself, and defendant never received any part of the earnings of said vessel; and that said Thomas never did, by and with the request and consent of this defendant, from time to time, expend any sums of money whatever about said vessel, in providing supplies or making repairs.

The complainant filed a general replication to each of said answers.

From the deposition of *Tristram Clark*, it appears, that, in the year 1847, he became owner of one-eighth of said barque; continued owner till 1854. In 1849, he transferred the same to Samuel F. and Amos Chase, as collateral security, and authorized them to transact the business and receive the earnings of the vessel, to be applied in liquidation of his indebtedness. The transfer was, in form, absolute, but between the parties considered a mortgage. In 1854, he settled with said Samuel and Amos and sold them his one-eighth, but gave no other bill of sale at that time, as the first was thought to be sufficient. After that time he did not claim to have any interest in the vessel.

Samuel F. Chase died about the year 1862. The bill of sale was prepared at Saco. No enrolment or register of the vessel, nor any copy thereof, was there when the bill of sale was written. Deponent gave a note in part payment of the vessel when he purchased, which afterwards came into the hands of McLellan, who called on him for payment of it. It was afterwards sued. To the deponent's knowledge, the execution has not been paid.

Complainant's proofs tended to show that Amos Chase, in 1855 or 1856, claimed to be a part-owner of the vessel; had knowledge of the repairs while they were being made; consulted the master whether it was advisable to sell her on her arrival at a foreign port; and, at several times during the years 1853 and 1854, had received payments of the earnings of the vessel.

The execution of *Hanscomb* v. *Clark* was returned without any indorsement of satisfaction.

In the bill of sale to Osborne of three-eighths of the vessel, dated July 22d, 1857, there were no conditions of sale expressed. It appeared from the register, issued from the custom house at Portland, dated Sept. 21, 1858, that he had sworn that he was owner of three-eighths, Sweetser of one-eighth, &c.

From the deposition of one of the firm of Nesmith & Sons, of New York, it was in evidence, that the vessel was consigned to them in the summer of 1859; that Osborne came to their office and represented himself as an owner of the vessel; called several times and desired information in relation to the business of the vessel. He made no objection to their acting as the vessel's agents. He did not state that he held the part of her as security; said he was an owner of the vessel.

There was evidence that McGilvery & Co., of Portland, had a demand against the owners for ship chandlery and stores furnished in September, 1858, for the vessel. A suit was commenced upon it, and judgment recovered. While the action was pending, Osborne called upon the attorney of McGilvery & Co.; did not deny his liability to pay it, but stated that McLellan, as ship's husband, would settle it. Judgment was recovered, on default, against Sweetser and Osborne as surviving owners.

For the purpose of proving the ownership of Osborne, two letters, written by him, were introduced by the complainant.

Nesmith & Sons brought an action upon their account of $2603,80 in the Circuit Court of the United States for the District of Maine, and judgment was rendered on default, against said Sweetser, Osborne and McLellan.

There was evidence tending to prove that Thomas McLellan was the plaintiff in interest in the action of *Hanson* v. *Tristram Clark;* that, by McLellan's direction, one-eighth of the vessel was seized as the property of Clark, and sold to one Williams, as the agent of said Thomas McLellan. Amos Chase was present at the sale and forbade the sale, claiming that part of the vessel as his. The sale was abandoned and the officer made no return on the execution.

The defendants, Amos Chase and Osborne, introduced testimony tending to verify the allegations in their respective answers.

*Evans & Putnam*, for complainant.

*Shepley & Dana*, for Amos Chase.

*Anderson & Webb*, for Osborne.

The opinion of the Court was drawn up by

DAVIS, J.—The plaintiff's testator was a part-owner of the barque Susan W. Lind; and, from 1857 to 1859, he paid certain bills against the vessel. He brings this bill in equity against the defendants for contribution, and for a final adjustment of the accounts. The only question now presented, is, whether the defendants were part-owners at the time the bills against the vessel were contracted.

Osborne received a bill of sale of three-eighths of said vessel, in 1858. Though absolute in form, it was probably designed as collateral security for his liabilities. But, however it might have been originally, he appears soon afterwards to have assumed the management and control of the vessel as one of the owners. His letters to McLellan, the testimony of Nesmith, and especially the fact of his paying bills against the vessel, and suffering himself to be defaulted, and judgment to be rendered against him, in suits upon other bills, are satisfactory evidence that he was a part-owner, and is liable as such.

In regard to Amos Chase, the testimony of Clark is positive, that he sold one-eighth of the vessel to him and his brother Samuel, in 1854. No bill of sale was then given, because there had been a previous conveyance, which the parties thought sufficient. But they paid Clark for it; and, if the conveyance was invalid as to third parties, it was valid as between themselves. They became the actual owners of one-eighth, and had the rights, and were subject to the liabilities of part-owners, with some exceptions which do not apply to this case.

The testimony of Clark is confirmed by the fact that Amos Chase afterwards repeatedly claimed to be an owner.

It is argued that Chase lost his interest by the sale on ex-

ecution, as the property of Clark, Nov. 10, 1855. That such a sale was made, there can be no doubt. But the parties to it were McLellan, who owned the execution, and Clark, the debtor, who had the record title of the interest in the vessel. Williams, who acted for McLellan, did not claim the vessel under the sale. Clark did not claim to have the debt discharged by the sale. And McLellan gave up all claim, and ordered the officer not to make any return of his doings. Thus, by the consent of all the parties interested, the sale was vacated and revoked. Chase is not in a position to claim that it was valid, and that it divested him of his title.

Samuel F. Chase having deceased, his representatives should have been made parties to the bill. If an amendment shall be offered and allowed for that purpose, the bill will then be sustained, and a master can be appointed to determine the rights and liabilities of the parties, unless the representatives of Samuel shall claim a further hearing.

*If not amended, the bill must be dismissed.*

APPLETON, RICE, GOODENOW and WALTON, JJ., concurred.